UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:13-CV-00139-LLK

POLLY BUSTER                                                                               PLAINTIFF

v.

CAROLYN COLVIN                                                                         DEFENDANT
    Acting Commissioner of Social Security

## MEMORANDUM OPINION AND ORDER

Polly Buster filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security that denied her application for supplemental security income (SSI) benefits. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.

Plaintiff asserts that the administrative law judge (ALJ) made several errors, but she focuses upon the ALJ's rejection of her treating physician's opinion that she can alternately sit and stand at a work station (with short breaks every two hours) for "less than 4 hours," would be expected to be absent from work due to treatment/symptoms "all the time," and "may need walker and/or wheelchair." Administrative Record (AR), p. 374.

For the reasons discussed below, the Commissioner's final decision is AFFIRMED and the Plaintiff's Complaint is DISMISSED.

### Summary Of The Medical Evidence

In 2010, Plaintiff filed an application for disability benefits. AR, p. 20. She has not worked for at least 15 years and, therefore, has no past relevant work. AR, p. 53. She is a younger individual born in 1962. AR, p. 63.

Plaintiff alleges that she was involved in a car wreck at age 16 and has since experienced some degree of pain in her lower back and legs. AR, p. 303. The pain worsened significantly in 2006. AR, p. 148.

Plaintiff described the pain in the Pain and Daily Activities Questionnaire submitted in connection with her disability claim as affecting her ability to sit and stand:

> The pain in my back gets so bad that I cry with it. I can't sit still. I can't stand up straight. My legs get to feeling like [they are] burning [and] tingling. I can't feel them. They give out on me. [They are] heavy, numb, stay swollen a lot. Right leg won't bend. It gets so hard to move. My chest starts hurting. It gets hard to breath. The [doctor] says I have an enlarged heart. My legs stay cold, like my circulation is bad.
>
> (AR, p. 148).

In September, 2010, Paula Malhotra, M.D., examined Plaintiff at the request of the Commissioner. Dr. Malhotra noted that Plaintiff used a walker throughout the examination and Plaintiff reported that she had been using it for about a year. AR, p. 304. Dr. Malhotra stated that Plaintiff is an obese smoker.

Based on her performance during the exam, her insistence upon using the walker, and her inability to get on and off the exam room table without "extreme amounts of assistance," Dr. Malhotra opined that: 1) Plaintiff can sit for long periods of time but needs to "readjust" every hour; 2) She "should [] use her walker for all ambulation on all terrain" and even during readjustment "standing from sitting [and] sitting from standing"; 3) She should not to drive due to difficulty moving her right foot from gas to brake; 4) She can stand 30 minutes with a walker, and maybe 2 to 3 minutes without it; 5) She gets tired if required to walk more than 20 feet or lift more than 5 pounds. AR, pp. 304-305.

Dr. Malhotra recommended that "this patient have x-rays or MRI studies done of her lower back, hips and probably she should have an orthopedic examination for further examination of the muscoloskeletal exam." AR, p. 305.

In November, 2010, the Commissioner obtained a lumbar spine x-ray. The x-ray showed "joint space narrowing between L4 and L5 and L5 and S1 and also showed mild osteophyte formation on L4 and L5. This is consistent with mild degenerative disk disease." AR, p. 333.

In February, 2011, state agency program physician Amanda Lange opined limitations very similar to the ALJ's residual functional capacity (RFC) finding. <u>Compare</u> Dr. Lange's findings at AR, pp. 68-69 and ALJ's RFC at AR, p. 26. Dr. Lange rejected Dr. Malhotra's findings, to the extent thy exceeded her own findings, because Dr. Malhotra did not have the benefit of the lumbar spine x-ray and was perhaps unaware that the "walker is self-prescribed." AR, p. 69.

On April 9, 2011, Plaintiff "fell up wooden steps" on the porch at her mobile home. AR, pp. 44 and 362. She was transported by ambulance to T. J. Samson Community Hospital in Glasgow, Kentucky. An x-ray of her right knee showed that "There are degenerative changes involving the right knee. There is mild narrowing of the medial compartment. There are marginal osteophytes particularly laterally. Patellofemoral osteophytes are evident as well. There is spurring of the tibial spines. There are no discrete fractures. There are no lytic lesions. Bone mineralization is normal." AR, p. 367. An x-ray of the left knee was unremarkable. AR, p. 354.

In June, 2011, due to complaints of dyspnea (shortness of breath) on exertion, a chest x-ray was taken. The x-ray was unremarkable, and "the heart size and pulmonary vasculature are within normal limits." AR, p. 355.

The ALJ gave "great weight" to Dr. Lange's findings as being "consistent with" the x-ray and other "objective testing and examination findings." AR, p. 30. The ALJ found Plaintiff's complaints to be disproportionate and "inconsistent" with the objective evidence. AR, p. 27.

On January 26, 2012, Plaintiff's treating physician, Elizabeth Combs, D.O. [Doctor of Osteopathic Medicine], completed the Residual Functional Capacity Assessment form, finding, among other things, that due to "fall, low back pain": 1) Plaintiff can alternately sit and stand (at will) at a work station (with

short breaks every two hours) for "less than 4 hours" and 2) Plaintiff would be expected to be absent from work due to treatment/symptoms "all the time." AR, p. 373. Dr. Combs' commented that "patient may need walker and/or wheelchair." AR, p. 374.

In her application for disability benefits, Plaintiff admitted that the walker "wasn't prescribed by a doctor." AR, p. 160. At the administrative hearing on January 30, 2012, Plaintiff was in a wheelchair. However, she admitted that no physician had prescribed a wheelchair or told her that she needed to use one: "[W]hen I went to [Dr. Combs] the other day, … I told her that I need a wheelchair getting in and out of the house when I'm going to the grocery store and stuff, otherwise … I use my walker." AR, p. 45.

Dr. Comb's findings, if accepted, would preclude all full-time work as job attendance is mandatory and "less than 4 hours" of sitting/standing does not constitute a full work day.

The ALJ gave "little weight" to Dr. Comb's assessment. AR, p. 29.

### Additional Medical Evidence Not Contemplated By Dr. Lange's Assessment

Dr. Lange issued her opinion in February, 2011, and the ALJ accepted it.

Plaintiff argues that the ALJ erred in accepting an opinion that was given prior to development of substantial portions of the medical evidence.

The allegedly-substantial, additional medical evidence consists of the evidence denominated in the administrative record as Exhibits 9F through 17F. AR, pp. 335-397. It consists of the knee x-rays[1] and ER records related to Plaintiff's fall on April 9, 2011, which the ALJ specifically addressed in his written decision although Dr. Lange did not. In addition, there are progress notes from Dr. Combs and/or R. Brent Wright, M.D. (AR, pp. 338-347 and 369-371), physical therapy notes (AR, pp. 335-337 and 349-351), and evidence pertaining to a heart catheterization, heart studies, and laboratory blood work.

---

[1] The low back x-ray was before Dr. Lange.

The progress and physical therapy notes reveal no new objective medical findings, but show that Plaintiff continued to complain of low back pain, chest pain, legs giving out, shortness of breath, general weakness, and inability / unwillingness to exert herself. In August, 2011, Dr. Combs noted that "feet swelling is secondary to the patient's sedentary lifestyle. ... Patient needs to be more ambulatory and this is stressed in today's visit." AR, p. 370.

### Dr. Comb's Disabling Assessment Was Not Entitled To Controlling Weight

Dr. Combs opined that Plaintiff can sit/stand for less than 4 hours per workday and would be expected to be absent from work all the time. AR, p. 374. Assuming for the sake of argument that these per-se disabling opinions that go to the ultimate issues before the ALJ qualify as genuine medical opinions, the ALJ did not err in declining to give them controlling weight.

A treating physician's opinion is generally entitled to greater weight than the opinion of an examining or non-examining source. A treating physician's opinion is entitled to controlling weight if: 1) it is a genuine medical opinion as opposed to a medical source opinion on issues reserved to the Commissioner, 20 C.F.R. § 416.927(d), in which case the opinion is entitled to no "special significance, § 416.927(d)(3); 2) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," § 416.927(c)(2); and 3) the opinion is "not inconsistent with the other substantial evidence in your case record," § 416.927(c)(2).

Dr. Combs did not purport to base her opinion on objective medical diagnoses but rather upon the residual effects of the "fall" on April 9, 2011, and "low back pain" as reported by Plaintiff. AR, p. 374. The ALJ noted that, at the administrative hearing, Plaintiff admitted that she brought the form to Dr. Combs to complete and that she was present when Dr. Combs completed it and that Dr. Combs solicited responses from her. AR, pp. 30 and 58-59. A treating physician's report not entitled deference where it "appears to be a characterization of the plaintiff's complaints, rather than the results of any independent medical evaluation." *Durio v. Commissioner*, 1996 WL 169362 (6th Cir.).

In finding that Dr. Combs' assessment was unsupported by the objective x-ray evidence (AR, p. 30), the ALJ identified a substantial basis for finding that Dr. Combs' opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques.

In addition, Dr. Combs' opinion was inconsistent with other substantial evidence, i.e., Dr. Lange's assessment, which the ALJ gave "great weight." AR, p. 27. See Social Security Ruling (SSR) 96-9p (one "obvious inconsistency [is] when two medical sources provide inconsistent medical opinions about the same issue").

The ALJ was not required to give Dr. Combs' disability findings controlling weight.

### The ALJ Gave Good Reasons For Giving Dr. Combs' Assessment Little Weight

Even if a treating physician's opinion is not entitled to controlling weight, it may be entitled to greater weight than any other opinion in the medical record. Hence, if an ALJ does not give the treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to that opinion, § 416.927(c)(2), in light of the following factors: "[1] the length of the treatment relationship and the frequency of examination, [2] the nature and extent of the treatment relationship, [3] supportability of the opinion, [4] consistency of the opinion with the record as a whole, and [5] the specialization of the treating source." 20 C.F.R. § 416.927(c)(1) through (5).

Dr. Combs' opinion was based on subjective complaints of pain as reported by Plaintiff and not objective medical data such as lumbar spine and knee x-rays (Factor 3), and it was inconsistent with Dr. Lange's opinion (Factor 4). There is no indication that Dr. Combs is a specialist in the area of Plaintiff's alleged disability. Factor 5. The progress notes attributed to Dr. Combs (AR, pp. 338-347 and 369-371) list Dr. Wright as Plaintiff's primary provider, and it is unclear how long (if at all) prior to her disabling assessment in January, 2012, Dr. Combs was Plaintiff's primary provider. Factors 1 and 2.

The ALJ gave good reasons for giving little weight to Dr. Combs' disabling assessment. AR, p. 29.

**The ALJ Did Not Err In Giving Dr. Lange's Opinion Great Weight**

The final question regarding whether the ALJ properly applied the rules for weighing medical opinions is whether the ALJ erred in giving Dr. Lange's assessment great weight.

Generally, an opinion from a non-examining source (e.g., Dr. Lange) is entitled to less weight than the opinion of a treating source (Dr. Combs) or the opinion of an examining source (Dr. Malhotra). But "[i]n appropriate circumstances, opinions from [non-examining] State agency medical and psychological consultants [Dr. Lange] ... may be entitled to greater weight than the opinions of treating or examining sources [Drs. Combs and Malhotra]." SSR 96-6p. For example, the non-examining source opinion may be based on "more detailed and comprehensive information than what was available" to the other sources. *Id.*

The ALJ did not err in preferring Dr. Lange's opinion over Dr. Malhotra's because Dr. Lange rejected Dr. Malhotra's findings, to the extent thy exceeded her own findings, as Dr. Malhotra did not have the benefit of the lumbar spine x-ray and was perhaps unaware that the "walker is self-prescribed." AR, p. 69. In other words, Dr. Lange had access to more detailed and comprehensive information.

Whether the ALJ erred in preferring Dr. Lange's opinion to Dr. Combs is a bit more difficult as it is not the case that Dr. Lange had access to more information. As outlined above, Exhibits 9F through 17F (AR, pp. 335-397) were not before Dr. Lange.

In this circumstance, the Sixth Circuit has explained that the test is whether there is a reasonable likelihood that the sometimes-voluminous evidence that was not before the non-examining source would have changed the non-examining source's opinion or there is "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakley v. Commissioner*, 581 F.3d 399, 409 (6th Cir.2009).

In this case, the ALJ either specifically addressed the additional, subsequent evidence in his written decision or the evidence contained no new objective medical findings but merely showed that Plaintiff continued to complain of low back pain, chest pain, legs giving out, shortness of breath, general weakness, and inability / unwillingness to exert herself. The ALJ found these subjective complaints to be incredible.

The ALJ did not err in giving Dr. Lange's opinion great weight.

**The ALJ Properly Considered Plaintiff's Alleged Need For An Assistive Device**

Finally, Plaintiff contends that the ALJ did not properly consider her need for an assistive device.

SSR 96-9p provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. Plaintiff admitted that the walker and wheelchair had not been prescribed by a doctor, and there is no medical documentation supporting such need. AR, pp. 45 and 160. The ALJ explained that Plaintiff simply obtained these devices on her own and that Dr. Combs' statement that she "may" need a walker and/or wheelchair was equivocal. AR, pp. 28-29 and 374. In fact, Dr. Combs opined that Plaintiff needs to be "more ambulatory." AR, p. 370.

Alternatively, even if an assistive device is medically required to some degree, there is no compelling reason to disturb the ALJ's decision because "an individual who must use a hand-held assistive device to aid in walking or standing ... may still have the ability to make an adjustment to sedentary work that exists in significant numbers." *Id.* It is not self-evident that the jobs identified by the ALJ, which allowed for "discretion to sit or to stand" but no more than two hours of standing/walking (AR, pp. 53-54), would be eliminated by a need for a hand-held assistive device.

8

**ORDER**

For the foregoing reasons, the Court AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.